IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          :
                                  :
    v.                            :          **Criminal No. RDB-21-176**
                                  :
LINDA PYLANT,                     :
                                  :
    Defendant.                    :
                              ooooOooooo

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Erek L. Barron, United States Attorney

for the District of Maryland, and Harry M. Gruber, Assistant United States Attorney, moves

this Court to sentence the defendant, Linda Pylant (hereinafter "Pylant") to 66 months of total

incarceration, terms of supervised release, restitution of $1,410,308,[1] and a special assessment

of $400.

### The Advisory Sentencing Guidelines Calculation

The presentence report calculated a base offense level of 7 for Count One, pursuant to

U.S.S.G. §§ 2B1.1(a)(1), and increased that offense level by 14 levels, pursuant to U.S.S.G. §

2B1.1(b)(1)(H), because the reasonably foreseeable loss associated with the defendant's offense

was more than $1,500,000, but less than $3,500,000.  *See* ECF 30, Presentence Report (PSR) at

¶¶ 30-31.  The parties and the PSR further increased the offense level by two (2) levels, pursuant

to U.S.S.G. § 2B1.1(b)(10)(C), because Pylant's offense involved sophisticated means and she

intentionally engaged in the conduct constituting sophisticated means.  *See* PSR at ¶ 33.

---

[1]    Additional details about the requested restitution may be found in Exhibit 1 to this filing. Exhibit 1 is being filed under seal since it contains victim information.  The government also will be separately filing a motion for a preliminary order of forfeiture in the amount of $950,000. The defendant stipulated to this forfeiture in paragraph 12 of the plea agreement.

The Probation Office agreed with the government that Pylant's offense level should be further increased by two levels, pursuant to U.S.S.G. § 3B1.3, because Pylant abused a position of trust.  *See* PSR at ¶ 35.  The defendant objected to this portion of the PSR.  The Probation Office maintained that the adjustment was appropriate, explaining that the statement of facts in the plea agreement showed that Pylant's position "did not have much oversight and also required her to facilitate significant transactions on behalf of her employer, Insights Incorporated."  PSR at 21.  In support of this determination, the PSR noted the following facts:

- Ms. Pylant was an office administrator who was responsible for bookkeeping, making check deposits, picking up mail, corresponding with different departments, handling accounts receivable, accounts payable, human resources, and other accounting duties.

- Ms. Pylant was able to open bank accounts for her employer and was the "sole signatory" for one account. This authority enabled her to have bank statements mailed directly to her home.  Pylant used this account during the fraud to facilitate check deposits and withdrawals.

PSR at 21.    According to the plea agreement and the PSR, the defendant's offense level should then be reduced by three (3) levels due to the defendant's prompt acceptance of responsibility. The presentence report calculated the defendant's criminal history as category III.  *See id.* at ¶¶ 46-48.  Based on an offense level of 22, and a criminal history category of III, the PSR found that the applicable advisory sentencing range for Count One is 51-63 months' incarceration.  The parties stipulated in the plea agreement that Counts One, Seven and Eight all group, pursuant to U.S.S.G. § 3D1.3(a).  Consistent with governing statute and the plea agreement, the PSR found that this Court is required to impose a sentence of two years' incarceration, consecutive to any other period of confinement, for Count Six.  *See* PSR at ¶¶ 72-73.  Thus, the overall guideline range for Pylant's crimes is 75-87 months' incarceration.

**Pylant's Criminal Conduct Was Egregious and Long-Lasting**

From 2012 to July 2020, Linda Pylant ("Pylant") worked for Insights Association, Inc. or its predecessor companies (collectively "Insights").  Insights was a member-supported organization that promoted the interests of its members in market research issues, and supported them with legal and business advice, and training for employees of Insights' members.  ECF 27 at 13.  In October 2017, Pylant fraudulently opened a bank account for Insights at Shore United Bank.  Pylant was the only signatory on the Shore United Bank account for Insights and the bank statements for the account were sent to Pylant's residence.  From 2017 to 2020, Pylant diverted more than $700,000 in money to the Shore United Bank account that Pylant controlled.  Pylant further diverted more than $70,000 of Insights' funds that were from Insights' PayPal account to the Shore United Bank account.  Pylant also fraudulently issued Insights checks that were payable to Pylant.  Pylant had insider access that allowed her to issue these checks and add the electronic signature of the then-CEOs of Insights, identified as Executive #1 and Executive #2 in the factual stipulation.  ECF 27 at 14.  In so doing, Pylant knowingly transferred, possessed and used, without lawful permission, the personal identifying information of Executives #1 and #2 during and in relation to her fraud offenses.  Pylant obtained more than $900,000 through her fraud scheme that victimized Insights.

Pylant did not limit her crimes to wire fraud and aggravated identity theft.  She also engaged in social security fraud, disability insurance fraud, bankruptcy fraud, and tax evasion.  ECF 27 at 14-16.  She lied to the Social Security Administration and the disability insurance company about her ability to work and her income.  ECF 27 at 14-15.  Her social security fraud and disability insurance fraud allowed her to fraudulently obtain more than $200,000 in additional fraudulent funds.  ECF 27 at 15.

3

Pylant also committed fraud in three different bankruptcy proceedings.  In February 2016, Pylant submitted a bankruptcy petition that failed to list the income she had received from Insights.  *See id*.  In March 2016, Pylant made false statements in the bankruptcy, claiming that she had zero earned income, was not required to file taxes, and that her employment status was unchanged from February 2016.  ECF 27 at 15-16.  Then, in December 2020 and January 2021, Pylant intentionally omitted listing LPSR when the bankruptcy required her to list all the business names she had used in the last eight years.  She "falsely affirmed that she had not 'used any business names or EINs.'"  ECF 27 at 16.

Finally, from 2014 to 2020, Pylant engaged in a scheme to hide her income from the Internal Revenue Service ("IRS").  She convinced her bosses to pay her through an entity she called LPSR, Inc. ("LPSR").  Pylant did not register LPSR with the State of Maryland nor the IRS.  Pylant created and submitted fake and fraudulent LPSR invoices to Insights to justify the wages she was having paid through LPSR.  Pylant used her inside access at Insights to register LPSR as a vendor (with no federal tax identification number), and caused Insights to not issue LPSR nor Pylant a Form 1099 each tax year.  If the 1099 had been issued, the IRS would have caught Pylant's tax evasion much sooner.  Pylant's six years of tax evasion caused a tax loss to the United States of more than $225,000.

**Pylant's Crimes Involved An Abuse Of Trust**

The federal sentencing guidelines provide for a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3. The Commentary to § 3B1.3 explains that such "[p]ersons . . . . ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature."  *Id.*  The Commentary instructs that the position or special skill must have facilitated the

crime in some way.  *See id.*  The Fourth Circuit has instructed that "[t]he 'central purpose' of the enhancement 'is to penalize[ ] defendants who take advantage of a position that provides them with the freedom to commit a difficult to detect wrong.'"  *United States v. Agyekum*, 846 F.3d 744 (4th Cir. 2017) (quoting *United States v. Brack*, 651 F.3d 388, 393 (4th Cir. 2011)).

The Fourth Circuit has held that "[w]hen assessing whether the defendant abused a position of trust," courts should evaluate several considerations, "including (1) whether the defendant had special duties or special access to information not available to other employees, (2) the extent of the discretion the defendant possessed, and (3) whether the defendant's actions indicate that he is more culpable than others in similar positions who engage in criminal acts." *United States v. Barringer*, *25* F.4th 239, 254 (4th Cir. 2022) (internal quotations and citations omitted).  The nature of the defendant's role and duties must be examined from the perspective of the victim.  *Id.*

In *United States v. Melendez*, 41 F.3d 797, 799 (2d Cir. 1994), the Second Circuit explained why the abuse of trust adjustment should apply to the defendant postal worker, rejecting the defense argument that the defendant was akin to a mere bank teller.  The Second Circuit explained that the defendant was one of a select number of employees with "access to the Registry Room and to the safe" from which the theft occurred.  *Id.*  Moreover, unlike a bank teller, who "receives a precise sum of money at the beginning of each day for which that teller must account penny-for-penny at day's end," Melendez was "given a greater degree of trust" and not subject to "close supervision."  *Id.*

In *United States v. Miller*, 906 F.3d 373, 373-75 (5th Cir. 2018), the Fifth Circuit affirmed the abuse of trust adjustment, holding that an accounts payable clerk with responsibility for weekly vendor payments abused the trust placed in her by her company.  The facts in *Miller* are similar to those of Pylant's crime.  In *Miller*, the defendant used her access to the company's

books and records to issue checks payable to her boyfriend, and divert funds from the company for her own benefit. *Id*. at 375. Miller used a joint bank account that she opened with the boyfriend to receive the funds from her employer. *Id*.

Here, it is plain from the relevant facts that Pylant abused the trust placed in her by her employer. During the course of Pylant's crimes, she was loosely supervised by the CEOs of Insights.[2] Pylant had broad discretion to handle financial matters at Insights and her bosses placed a lot of trust in her, which she took advantage of to commit the charged crimes. According to the statement of facts in the plea agreement, Pylant was responsible for bookkeeping duties, making check deposits, handling accounts receiveable, accounts payable, human resources, and accounting duties. ECF 27 at 13. Pylant also used her special access to the books and records of Insights to electronically issue checks payable to Pylant, and forged the signatures of the CEOs on the checks that Pylant caused to be payable to her. Pylant used her PayPal access to further divert funds, and regularly received and diverted checks that were intended to pay Insights' membership fees. These funds flowed into a bank account that Pylant's position allowed her to open in the company name at Shore United Bank.

Pylant had payroll duties for the whole company. Pylant also had special responsibilities each year for the preparation and issuance of 1099s for herself or her company, LPSR. The CEO trusted Pylant to issue the 1099s and Pylant falsely told Executive #1 that she had issued 1099s. In reality, Pylant was causing Insights to not issue her 1099s, which facilitated her tax fraud crime. This fact alone is sufficient to warrant the adjustment.

---

[2]     The CEO of Insights changed during Pylant's tenure. Most of her crimes were conducted under one CEO (Executive #1), who then retired, and was replaced by another CEO (Executive #2), who was in charge when Pylant's crimes were discovered.

Additionally, after Pylant's crime was detected, the former CEO realized that Insights had not reconciled the payments shown as received from Insights' members and the deposits to Insights' real bank accounts.  This difference in amounts flowed from Pylant's diversion of the member payments.  Insights' former CEO commented to law enforcement that Pylant played him "like a fiddle."  He commented that he had a soft side for Pylant and over-relied on her.

These facts make plain that Pylant occupied a special role at Insights that facilitated her crimes.  *See also United States v. West*,  370 Fed. App'x 505, 506 (5th Cir. 2010) (approving abuse of trust adjustment because defendant's job "gave him access to [his employer's] accounting and billing information and gave him a unique opportunity to alter those records without any immediate supervision"); *United States v. Berkman*, 433 Fed. App'x 859, 866 (11th Cir. 2011) (affirming abuse of trust adjustment for a bookkeeper who used her friendship and professional relationship with her boss to facilitate the crime because she had a low level of supervision).

Unlike other employees, Pylant's responsibilities allowed her to divert the incoming member checks and deposit them at Shore United.  Pylant had the ability to issue checks on behalf of the company, and she electronically signed the checks, thus going around the very limited constraint that she was not a signatory on the legitimate Insights' bank account.  Pylant also used her responsibilities for payroll and 1099s to avoid issuing herself/LPSR a 1099 for each year, thus facilitating her tax frauds.  In all of these ways, Pylant is very different than a bank teller who is subject to video surveillance, teller counts, and other close supervision.  Instead, Pylant is akin to the loose supervision in *Melendez* and the special roles that facilitated the crime in *Miller*.  Accordingly, the government submits that the PSR correctly increased Pylant's offense level by two levels, pursuant to U.S.S.G. § 3B1.3, because Pylant abused a position of trust.  *See* PSR at ¶ 35.

**Pylant's Criminal History Shows The Need For A Significant Sentence**

Pylant's crimes in this case are very serious and lasted a long time.  However, this is not Pylant's first time committing criminal offenses nor her first time being sentenced for criminal offenses.  In fact, Pylant repeatedly has shown that she is unable to resist using money and property that belong to her employer for her own benefit, despite multiple prior experiences in the criminal justice system.  The government believes this criminal history highlights the need for incarceration here.

In 2003, Pylant was convicted of theft over $500 in Anne Arundel County Circuit Court. The relevant facts indicate that Pylant worked as a general manager for an auto body business located in Crofton.  PSR at 11.  In facts paralleling the present case, Pylant used checks from the business and personal accounts to divert money for her benefit and to pay her debts.  Pylant's job at the auto body business allowed her control over multiple financial aspects of the business, and she took advantage of the owner to commit the crime.  Pylant obtained more than $40,000 through her crimes, which lasted from approximately 2000 to 2002.

In 2007, Pylant was again convicted of theft over $500 in Anne Arundel County Circuit Court.  Pylant's offense again related to her employment—this time from 2005 to 2006, when she worked for a collision repair company in Glen Burnie.  At the beginning of her employment, she had very little control over financial matters, but as time went on, the business owner gave her more and more access to the finances.  Most importantly, from November 2005 to May 2006, Pylant was in charge of account payables and receivables.  PSR at 12.  After an internal audit by the business owner, it was determined that Pylant was demanding or accepting cash from customers, and altering financial records to cover up her crime.  Pylant obtained approximately $15,000 illegally.

### The Government's Sentencing Recommendation

As this Court well knows, the Court is required to impose a reasonable sentence that is no greater than necessary based on multiple factors, including "the nature and circumstances of the offense," the need to punish the defendant, "the history and characteristics of the defendant," the need to "to promote respect for the law," and the need for both specific and general deterrence.  18 U.S.C. § 3553(a).

The nature and circumstances of Pylant's offenses are clearly very serious.  Pylant engaged in sophisticated frauds over an extended duration.  For years, Pylant lied to her bosses, making them think she was working in the best interests of Insights when in reality, she was siphoning off money from Insights in multiple ways.

The sophistication of her crime is evident in the many ways that she took the money.  She diverted incoming checks from Insights' members, she caused payments out of Insights via PayPal, she fraudulently issued Insights' checks that bore the signatures of Executive #1 and Executive #2.  Moreover, Pylant hid her income from SSA, the IRS, and the bankruptcy court, and manipulated the 1099s and other reporting so that no one would learn of the income she was receiving through her fake entity, LPSR.  Crimes such as these, especially when they occurred over an extended time period during which she repeatedly made the decision to violate the law, require a significant term of incarceration.

Pylant's need for a substantial period of incarceration is reinforced by Pylant's prior and highly relevant criminal history.  Many defendants in this type of case are first time offenders. By contrast, Pylant's history and characteristics weigh against her.  She has committed very similar crimes in the past, and instead of seeing the errors of her ways, she graduated to much more serious crimes that caused more widespread financial damage.  She has been given multiple chances before to reform her ways, and she squandered them.  In short, Pylant is a

major risk of recidivism and her conduct requires a substantial sentence to provide just

deterrence to her personally and to others who might think it is okay to help yourself to your

employer's funds.

## **CONCLUSION**

The government asks this Court to impose a sentence of 42 months' incarceration for

Counts One, Seven, and Eight, 24 months' incarceration, consecutive, for Count Six, resulting in

a total term of 66 months' incarceration.  The government further asks the Court to impose

appropriate terms of supervised release, restitution of $1,410,308, and a special assessment of

$400.

Respectfully submitted,

EREK L. BARRON
UNITED STATES ATTORNEY

By        _____/s/_____
          Harry M. Gruber
          Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have filed the attached document in the ECF system, thereby causing a copy to be delivered to opposing counsel.

<div align="center" style="margin-left:40%">
_____/s/_____<br>
Harry M. Gruber<br>
Assistant United States Attorney
</div>